UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QILONG MIN,

                              Plaintiff,

        vs.                                                    1:23-CV-1201
                                                               (MAD/ML)
STATE UNIVERSITY OF NEW YORK
AT ALBANY, CHRISTOPHER THORNCROFT,
and BRIAN SELCHICK,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

COBURN GREENBAUM                          BARRY COBURN, ESQ.
& EISENSTEIN, PLLC
1710 Rhode Island Avenue Northwest
Second Floor
Washington, D.C. 20036
Attorney for Plaintiff

OFFICE OF THE NEW YORK                    AIMEE COWAN, AAG
STATE ATTORNEY GENERAL
300 South State Street
Suite 300
Syracuse, New York 13202
Attorney for Defendants

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Qilong Min, Ph.D ("Plaintiff") commenced this action on September 25, 2023, alleging

discrimination, retaliation, and violation of his constitutional rights at his workplace, the State

University of New York at Albany ("SUNY Albany"). *See* Dkt. No. 1. Plaintiff filed an amended

complaint on December 12, 2023. *See* Dkt. No. 18. The amended complaint sets forth five

1

causes of action against SUNY Albany; Christopher Thorncroft, Ph.D., Plaintiff's supervisor; and Brian Selchick, SUNY Albany's former Director of Employee Relations (collectively, "Defendants"). *See id.* Plaintiff's five claims are: (1) race and national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), asserted against SUNY Albany; (2) Title VII retaliation, asserted against SUNY Albany; (3) race and national origin discrimination under the New York State Human Rights Law ("HRL"), asserted against all Defendants; (4) retaliation under the HRL, asserted against all Defendants; and (5) a Fourteenth Amendment equal protection violation pursuant to 42 U.S.C. § 1983, asserted against Defendants Thorncroft and Selchick in their personal capacities. *See id.* at ¶¶ 124-57.

On February 4, 2026, Defendants filed a motion for summary judgment on all claims. *See* Dkt. No. 73. Plaintiff opposed the motion on April 13, 2026, *see* Dkt. No. 82, and Defendants filed a reply on May 4, 2026, *see* Dkt. No. 89. For the following reasons, the motion is granted.

## II. BACKGROUND

Although Plaintiff filed a counseled response to Defendants' statement of undisputed material facts, the response does not comply with this Court's Local Rules because it lacks any citations to the record for each fact that Plaintiff purports to dispute. *See* Dkt. No. 85; N.D.N.Y. L.R. 56.1(b) ("Each denial shall set forth a specific citation to the record where the factual issue arises"). Plaintiff's response also adds new commentary and factual assertions without citations to the record. *See* Dkt. No. 85. The Local Rules "are 'essential tools' intended to relieve the district court 'of the onerous task of "hunt[ing] through voluminous records without guidance from the parties."'" *Frantti v. New York*, 414 F. Supp. 3d 257, 284 (N.D.N.Y. 2019) (quoting *Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 238 (N.D.N.Y. 2019)); *see N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005)). To that end, the

2

Local Rules clearly state that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 56.1(b). "Conclusory denials unsupported by specific citations to the record are insufficient[,]" and "the Court is not required to search the record for evidence that the parties fail to point out in their Local Rule statements." *Colton v. N.Y. Div. of State Police*, No. 5:14-CV-801, 2017 WL 5508911, *2 (N.D.N.Y. Feb. 8, 2017) (collecting cases). That is particularly true when a party is represented by counsel. *Cf. Loveall v. Walker*, 807 F. Supp. 3d 148, 157 (N.D.N.Y. 2025) (discussing the scope of special solicitude afforded to *pro se* litigants who fail to respond properly to a movant's statement of undisputed material facts).

Insofar as the factual assertions in Defendants' statement of undisputed material facts are supported by the record, the Court deems them admitted and accepts them as true. *See Davis v. Cumberland Farms, Inc.*, No. 1:10-CV-480, 2013 WL 375477, *4 (N.D.N.Y. Jan. 29, 2013) (citing *Aktas v. JMC Dev. Co.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012)); *see also Colton*, 2017 WL 5508911, at *2 ("The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. The failure to properly controvert a supported statement of fact by pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted") (collecting cases). Accordingly, the following factual summary is derived from Defendants' statement of undisputed material facts and the supporting evidence.

## A.    Plaintiff's Background

Plaintiff is from Wuhan, China and moved to the United States around 1989. *See* Dkt. No. 73-1 at ¶¶ 1, 4. He became a United States citizen in 1999. *See id.* at ¶ 4. Plaintiff earned bachelor's and master's degrees from Wuhan University and a doctorate in physics from the

University of Alaska.  *See id.* at ¶¶ 2, 5.  He was hired at SUNY Albany in the 1990s[1] and worked there until his termination in 2024.  *See id.* at ¶ 6.  At the time of the events giving rise to this action, Plaintiff worked as a Research Associate in the Atmospheric Sciences Research Center ("ASRC") at SUNY Albany.  *See id.* at ¶ 7.  The ASRC "develop[s] and administer[s] programs in basic and applied sciences related to the atmospheric environment."  *Id.* at ¶ 9.

Defendant Thorncroft assumed the role of ASRC Interim Director in February 2019.  *See id.* at ¶ 41.  Before Defendant Thorncroft took over as Interim Director, he and Plaintiff had no negative interactions.  *See id.* at ¶ 42.  Since 2019, however, the record shows numerous incidents of escalating tension between Plaintiff and Defendants.  Those incidents, which are summarized in turn below, include: (1) Plaintiff's alleged removal from a New York State Energy Research and Development Authority ("NYSERDA") project in 2019; (2) supposed allegations by Defendant Thorncroft in 2019 that Plaintiff misused SUNY Albany property; (3) Defendant Thorncroft's alleged interception of a Department of Energy ("DOE") proposal that Plaintiff intended to make in 2019; (4) denial of a discretionary salary increase to Plaintiff in 2020; (5) Plaintiff's removal from a project with Howard University in 2021; (6) a 2021 performance evaluation where Plaintiff claims Defendant Thorncroft made racist comments about his accent; (7) a 2021 counseling session where Plaintiff claims Defendant Selchick derogatorily compared him to a janitor; (8) Plaintiff's filing of complaints with SUNY, the New York State Division of Human Rights ("DHR"), and the Equal Employment Opportunity Commission ("EEOC"); (9) Plaintiff's placement on an alternate assignment in 2021 during an investigation into his potential forgery of Defendant Thorncroft's digital signature; and (10) discovery of a clandestine

---

[1] Defendants state that Plaintiff began working at SUNY Albany in 1999, *see* Dkt. No. 73-1 at ¶ 6, but Plaintiff's curriculum vitae, which is part of the record, indicates he was a post-doctoral researcher there as early as 1994, *see* Dkt. No. 83-1 at 2.

employment contract between Plaintiff and Wuhan University. Separately but relatedly, as discussed below, Plaintiff was the subject of a federal investigation in 2020.

**B.      NYSERDA Project, Misuse of University Property, and DOE Proposal Interception**

In 2019, Defendant Thorncroft allegedly removed Plaintiff from a NYSERDA-funded project. *See* Dkt. No. 18 at ¶ 53. Defendant Thorncroft denies ever doing this, *see* Dkt. No. 73-1 at ¶ 46, and Plaintiff cites no evidence to the contrary, *see* Dkt. No. 85 at ¶ 46.

That same year, Defendant Thorncroft allegedly accused Plaintiff of misappropriating University property for his own personal use. *See* Dkt. No. 18 at ¶ 54. Defendant Thorncroft asserts that he never made this accusation, *see* Dkt. No. 73-1 at ¶ 52, and again, Plaintiff cites no contrary evidence, *see* Dkt. No. 85 at ¶ 52. The property use issue was related to the occupation of space at the ASRC by a company called ecoLong, which is operated by Plaintiff's daughter. *See* Dkt. No. 73-1 at ¶¶ 54, 59-60. Plaintiff had developed a solar power monitoring technology known as eSIR, which was licensed to ecoLong, and received compensation based on the license agreement. *See id.* at ¶¶ 54-55, 57. Defendant Thorncroft asserts he was unable to obtain clarification from Plaintiff or Plaintiff's daughter regarding the authorization for and duration of ecoLong's presence in the ASRC, *see id.* at ¶¶ 63-65, and Plaintiff does not cite any evidence to the contrary, *see* Dkt. No. 85 at ¶¶ 63-65. Eventually, it was determined that ecoLong had proper authorization to use the ASRC space. *See* Dkt. No. 73-1 at ¶¶ 68-71. Plaintiff was never disciplined or counseled in relation to this issue. *See id.* at ¶ 72.

In July 2019, Defendant Thorncroft allegedly blocked a $4 million project proposal that Plaintiff planned to make to the DOE. *See* Dkt. No. 18 at ¶ 55. The record shows that to request funding, researchers must adhere to a deadline-driven process set by SUNY Albany's Sponsored Programs Administration Pre-Award Services. *See* Dkt. No. 73-1 at ¶ 78. The proposal

documents are then loaded into a portal for review by the appropriate administrators. *See id.* at ¶¶ 80-81. The record indicates that Plaintiff's proposal could not move forward because he failed to submit all the necessary items on time, *see id.* at ¶ 91, and Plaintiff cites no contrary evidence, *see* Dkt. No. 85 at ¶ 97. Defendant Thorncroft avers that "[i]f [P]laintiff had timely submitted his proposal and it had been presented for [his] review, he undoubtedly would have given his approval." Dkt. No. 73-1 at ¶ 99. Plaintiff requested and received a detailed explanation of why the project could not proceed. *See id.* at ¶¶ 106-07.

**C.    Federal Investigation**

In June 2020, Plaintiff's home and office were searched as part of a federal investigation into his alleged affiliation with and support from the Chinese government on research grants. *See* Dkt. No. 73-1 at ¶¶ 115, 117, 434. Specifically, Plaintiff was accused of receiving undisclosed funding through an employment agreement with Wuhan University and participation in a talent recruitment program run by the Chinese government.[2] *See id.* at ¶ 438.

Defendants Thorncroft and Selchick first became aware of the federal investigation around the time Plaintiff's home and office were searched. *See id.* at ¶ 116. They later received a list of items collected during the investigation, which included a copy of the talent program contract, "miscellaneous paperwork" regarding Wuhan University, plane tickets, and documents associated with the Bank of China. Dkt. No. 73-39 at 3; *see* Dkt. No. 73-1 at ¶¶ 334-35, 338. These items raised concerns that Plaintiff had violated the New York Public Officers Law by failing to disclose employment with and income from Wuhan University. *See* Dkt. No. 73-1 at ¶ 376.

---

[2] The SUNY Research Foundation paid $313,574 in 2024 to resolve the allegations. *See* Dkt. No. 73-1 at ¶ 434.

Before learning of the federal investigation, Defendant Thorncroft was aware that SUNY Albany and Wuhan University maintained a collaborative relationship memorialized by a memorandum of understanding. *See id.* at ¶ 119. Defendant Thorncroft knew that Plaintiff frequently visited and collaborated with Wuhan University, but was unaware of any separate employment agreement between Plaintiff and Wuhan University. *See id.* at ¶¶ 120-21. As explained below, Plaintiff's undisclosed employment with Wuhan University played a role in his termination several years after Defendants Thorncroft and Selchick learned of the federal investigation.

**D.      Denial of Discretionary Salary Increase**

In 2020, Plaintiff did not receive a discretionary salary increase. *See* Dkt. No. 73-1 at ¶ 135. These increases are awarded by the ASRC Director for exceptional performance. *See id.* at ¶¶ 129-30. The increases are usually under $2,000 and are not guaranteed. *See id.* at ¶ 131. Defendant Thorncroft attests that race and national origin are not considered in awarding discretionary salary increases. *See id.* at ¶ 134. He avers that an Asian researcher received one of the highest increases in 2019 and 2020, and seven white employees did not receive an increase in 2020. *See id.* at ¶¶ 132-33. Defendant Thorncroft asserts that Plaintiff did not receive an increase because his performance did not warrant one. *See id.* at ¶ 136. Although Plaintiff asserts that the denial was discriminatory, he does not cite any evidence for that proposition. *See* Dkt. No. 85 at ¶¶ 132-37, 139.

**E.      Howard University Project**

In January 2021, the ASRC was invited to submit a subcontractor proposal for a project affiliated with Howard University. *See* Dkt. No. 73-1 at ¶ 234. Defendant Thorncroft asked a white scientist, Dr. Jerald Brotzge, to lead the proposal. *See id.* at ¶ 237. Plaintiff asserts, without

citation, that he had a twenty-year relationship with Howard University. *See* Dkt. No. 85 at ¶¶ 237-38. Plaintiff argued that he would lead SUNY Albany's response, not Dr. Brotzge. *See* Dkt. No. 73-1 at ¶ 238. Defendant Thorncroft insisted that Dr. Brotzge would lead the proposal, and Plaintiff protested again. *See id.* at ¶¶ 239-40. Plaintiff alleges that Defendant Thorncroft discriminatorily removed him as the Principal Investigator of the project and replaced him with Dr. Brotzge. *See* Dkt. No. 18 at ¶¶ 71-72.

On February 12, 2021, Plaintiff emailed approximately thirty people, stating in part: "I cannot comprehend how it is acceptable to try to steal a project and then try underhanded tactics when that fails." Dkt. No. 73-1 at ¶ 249. A few days later, Defendant Thorncroft asked Plaintiff to collaborate with another scientist, Dr. Junhong Wang, on a budget proposal for the Howard University project. *See id.* at ¶ 250. They were unable to coordinate, and Plaintiff circulated a budget proposal that excluded Dr. Wang. *See id.* at ¶¶ 251-55. Defendant Thorncroft suggested combining Plaintiff's budget and Dr. Wang's budget to share with Howard University, but Plaintiff and Dr. Wang disagreed. *See id.* at ¶¶ 258-59.

Defendant Thorncroft asked Dr. Charles Ichoku, one of the Howard University scientists, for his input. *See id.* at ¶ 261. Dr. Ichoku indicated that Plaintiff's proposal would be too expensive, and Howard University was only interested in Dr. Wang's proposal. *See id.* at ¶ 262. Defendant Thorncroft still advocated for both proposals to be sent to Howard University, but before that happened, Plaintiff withdrew his proposal. *See id.* at ¶¶ 263-64. Howard University accepted Dr. Wang's proposal. *See id.* at ¶ 269.

**F.      Defendant Thorncroft's Comments During the Performance Evaluation**

On January 27, 2021, Defendant Thorncroft held a performance evaluation meeting with Plaintiff. *See* Dkt. No. 73-1 at ¶ 140. Defendant Thorncroft noted Plaintiff's accomplishments

and provided constructive criticism in certain areas, including Plaintiff's reduction in research funding over the prior year and a need to be more responsive and collaborative. *See id.* at ¶¶ 142, 151-52, 156-57. According to a written evaluation that Defendant Thorncroft drafted after the meeting, Plaintiff's performance was rated "satisfactory." *Id.* at ¶ 150.

Without citing the record, Plaintiff claims that Defendant Thorncroft disparaged him during the meeting for being a non-native English speaker and having an accent. *See* Dkt. No. 85 at ¶ 148; *see also* Dkt. No. 18 at ¶¶ 67-68. Specifically, Plaintiff alleges that Defendant Thorncroft asked if he spoke "the same language" as Air Force scientists and stated that Plaintiff's speech was "very technical." Dkt. No. 18 at ¶ 67. Plaintiff also alleges that Defendant Thorncroft asked him, throughout the meeting, to repeat simple English words. *See id.* at ¶ 69. Defendant Thorncroft avers that he does not recall making either comment, but in the past, he "may have used the phrase 'speak the same language' to refer to scientific language; in other words, whether someone who is not an atmospheric scientist understands the terminology." Dkt. No. 73-1 at ¶¶ 146-47.

**G.    Defendant Selchick's Comments During the Counseling Session**

On February 12, 2021, Plaintiff attended a counseling session with Defendants Thorncroft and Selchick. *See* Dkt. No. 73-1 at ¶ 275. The meeting concerned Plaintiff's repeated failure to provide missing information that was necessary for the eSIR to function correctly, despite Defendant Thorncroft's directives to do so. *See id.* at ¶¶ 194, 198-216, 232; Dkt. No. 73-30. Plaintiff surreptitiously recorded the meeting, and the recording was submitted with Defendants' motion. *See* Dkt. No. 73-1 at ¶¶ 276-77; Dkt. No. 73-30.

Plaintiff alleges that, during the counseling session, Defendant Selchick "analogized [Plaintiff's] obligation to follow [Defendant] Thorncroft's orders to a janitor being directed to

9

clean a room he had already cleaned." Dkt. No. 18 at ¶ 74. Defendant Selchick attests that he was not likening Plaintiff to a janitor; rather, "he was simply attempting to explain that any employee who has a supervisor must follow that supervisor's directions if the request is within the scope of their employment, even if the employee is frustrated by the request or feels that the task has already been completed." Dkt. No. 73-1 at ¶ 279. Defendant Selchick never made any comments about Plaintiff's race or national origin during the counseling session.[3] *See id.* at ¶ 280; Dkt. No. 73-30. Although Plaintiff contends that Defendant Selchick's comments were discriminatory, he cites no supporting evidence. *See* Dkt. No. 85 at ¶ 280.

Following the counseling session, Defendant Selchick drafted a counseling memorandum, which Defendant Thorncroft signed. *See* Dkt. No. 73-1 at ¶ 284. Plaintiff submitted a written rebuttal to the counseling memorandum. *See id.* at ¶ 286; Dkt. No. 73-32.

## H.    Plaintiff's SUNY and DHR Complaints

---

[3] The Court reviewed the entire recording. The recording depicts Defendant Selchick as saying:

> You disagree with what information they may or may not have.
> [Defendant Thorncroft] is telling you to provide it or re-provide it.
> And instead of saying, "OK, I'll do that," as frustrating as you may
> find that to be, instead of saying, "OK, I'll do that," you're saying,
> "You already got it. You already have it." That's insubordination.
> That's a problem.

Dkt. No. 73-30 at 37:54-38:16. Plaintiff replies, "That's the truth. It's not insubordination. That's the truth, right? You have to follow the truth, right?" *Id.* at 38:17-38:23. Defendant Selchick replies:

> It is insubordination regardless of whether it's true. Let me give you
> an example. Let's say I ask a cleaner to clean a floor. And the
> person cleans the floor. And I come in and I say, "It doesn't look
> clean. I want you to clean it again." And the employee says, "But I
> already cleaned it." And I say, "Well, I'm telling you to clean it
> again." And they say, "I'm not doing that. I already cleaned it. It's
> as clean as it's going to be." Is that not insubordination? If the
> employee refuses to clean the floor?

*Id.* at 38:24-38:56.

10

On March 10, 2021, Plaintiff filed an internal discrimination complaint with SUNY's Office of Equity and Compliance. *See* Dkt. No. 73-1 at ¶ 291; Dkt. No. 73-33. The SUNY complaint identified the date of discrimination as January 27, 2021, and detailed Defendant Thorncroft's remarks about Plaintiff's "technical" speech. Dkt. No. 73-1 at ¶ 292; Dkt. No. 73-33 at 1-2. It also identified as discriminatory conduct the January 2021 performance evaluation, February 2021 counseling memorandum, and a report by Defendant Thorncroft to human resources that Plaintiff was insubordinate. *See* Dkt. No. 73-1 at ¶ 292; Dkt. No. 73-33 at 2-3. The Office of Equity and Compliance closed the complaint after Plaintiff filed an external DHR complaint. *See* Dkt. No. 73-1 at ¶ 305.

Plaintiff filed the DHR complaint on March 18, 2021. *See id.* at ¶ 306; Dkt. No. 73-4. It reiterated the same grounds for Plaintiff's discrimination allegations. *See* Dkt. No. 73-4 at 7-8. It also stated that Plaintiff told Defendant Thorncroft he felt retaliated against for filing the internal complaint. *See id.* at 8. On August 30, 2021, the DHR dismissed Plaintiff's complaint for insufficient evidence. *See* Dkt. No. 73-1 at ¶ 308; Dkt. No. 73-5.

I.      **Forgery Investigation and Plaintiff's Alternate Assignment**

Near the end of 2021, Plaintiff was rarely seen on the SUNY Albany campus. *See* Dkt. No. 73-1 at ¶ 314. At that time, employees were permitted to work remotely fifty percent of the time due to the COVID-19 pandemic. *See id.* at ¶ 312. To receive permission to work remotely, employees needed to submit a telecommuting form for supervisory approval. *See id.* at ¶ 313. Plaintiff's form, which shows Defendant Thorncroft's digital signature, was discovered and reviewed in late 2021. *See id.* at ¶ 315; Dkt. No. 73-37. Defendant Thorncroft avers that he does not remember reviewing or approving the form. *See* Dkt. No. 73-1 at ¶ 316. Plaintiff testified that he could not remember whether he typed the digital signature himself. *See id.* at ¶ 317.

11

The SUNY Albany President's Office directed Defendant Selchick to place Plaintiff on an alternate assignment while the potential forgery was under investigation. *See id.* at ¶ 319. On November 17, 2021, Plaintiff received an alternate assignment letter. *See id.* at ¶ 320; Dkt. No. 73-38. The letter listed his new tasks and indicated that he must complete them from home. *See* Dkt. No. 73-1 at ¶ 321; Dkt. No. 73-38 at 1-2. The letter was signed by Defendant Selchick, *see* Dkt. No. 73-38 at 2, but Defendant Thorncroft had no input on the decision to place Plaintiff on an alternate assignment, *see* Dkt. No. 73-1 at ¶ 325. Because Defendant Selchick could not substantiate whether Plaintiff forged the digital signature, Plaintiff was never disciplined or counseled about it. *See id.* at ¶ 375.

**J.    Plaintiff's EEOC Complaint**

On December 23, 2021, after he was put on the alternate assignment, Plaintiff filed an EEOC complaint. *See* Dkt. No. 73-1 at ¶ 309; Dkt. No. 73-6. Therein, Plaintiff identified March 18, 2021, as the earliest date of discrimination and retaliation. *See* Dkt. No. 73-6 at 1. The EEOC complaint stated that Defendant Thorncroft questioned Plaintiff's communication abilities because of his accent and removed him from a leadership position on a research project. *See id.* It also alleged that Plaintiff's alternate assignment was retaliation for filing his SUNY and DHR complaints. *See* Dkt. No. 73-1 at ¶ 309; Dkt. No. 73-6 at 1-2. On June 28, 2023, the EEOC ceased its investigation and issued Plaintiff a right-to-sue letter. *See* Dkt. No. 73-7.

**K.    Wuhan University Employment Contract and Plaintiff's Termination**

In January 2022, during the forgery investigation and prior to the EEOC's determination, SUNY Albany received the list of Plaintiff's items seized during the federal investigation. *See* Dkt. No. 73-1 at ¶ 334. The seized items caused concern that Plaintiff may have violated the New York Public Officers Law by failing to make required disclosures about his affiliation with

12

Wuhan University.  *See id.* at ¶ 336.  On April 5, 2022, Defendant Selchick notified Plaintiff that a disciplinary interrogation had been scheduled regarding the Public Officers Law issue.  *See* Dkt. No. 73-1 at ¶ 351; Dkt. No. 73-43.  Defendant Thorncroft had no input on the decision to issue the notice.  *See* Dkt. No. 73-1 at ¶ 353.

During the interrogation, Defendant Selchick presented copies of Plaintiff's conflict disclosure statements from 2013, 2017, and 2018, as well as an employment contract[4] between Plaintiff and Wuhan University.  *See id.* at ¶¶ 355, 367.  Defendants assert, and Plaintiff does not contest, that Plaintiff was required to disclose remunerations exceeding $10,000 over the preceding twelve months from any entity other than SUNY Albany or the SUNY Research Foundation.  *See id.* at ¶ 356; Dkt. No. 73-44.  According to the newly discovered employment agreement, Plaintiff was to be paid more than $10,000 each year from Wuhan University.  *See* Dkt. No. 73-1 at ¶ 357.  There was no indication that Plaintiff had disclosed the contract—or its promised payments—to SUNY Albany.  *See id.* at ¶ 361.  Although there was a memorandum of understanding between SUNY Albany and Wuhan University, that memorandum did not specifically mention Plaintiff or his ability to enter a personal employment contract with Wuhan University.  *See id.* at ¶¶ 362-63; Dkt. No. 73-13.

After the interrogation, the SUNY Albany President's Office decided that Plaintiff should be suspended without pay based on his potential violation of the Public Officers Law.  *See* Dkt. No. 73-1 at ¶ 376.  He was suspended on May 6, 2022, and served with a notice of discipline on May 18, 2022.  *See id.* at ¶¶ 377-78; Dkt. Nos. 73-47, 73-48.  The record contains a revised notice of discipline dated July 25, 2023.  *See* Dkt. No. 73-1 at ¶ 404; Dkt. No. 73-49.  Both notices

---

[4] Defendant Selchick hired a third-party company to translate the contract from Chinese to English.  *See* Dkt. No. 73-1 at ¶ 341.  Plaintiff has not contested the translation.

accused Plaintiff of violating the Public Officers Law by failing to disclose his employment agreement and payment schedule with Wuhan University. *See* Dkt. Nos. 73-48, 73-49. The revised notice of discipline informed Plaintiff that "[t]he penalty of termination" would be imposed ten days from the date of the notice. *See* Dkt. No. 73-49 at 1.

Plaintiff requested an arbitration, as provided for in the collective bargaining agreement between his labor union and SUNY Albany. *See* Dkt. No. 73-1 at ¶ 409. On April 15, 2024, after a three-day hearing, an independent arbitrator found that termination was the appropriate penalty. *See* Dkt. No. 73-12. Plaintiff was represented by union counsel at the hearing, had the opportunity to present evidence, and had the opportunity to examine and cross-examine witnesses. *See* Dkt. No. 73-1 at ¶¶ 412-13. The arbitrator opined as follows:

> Suffice it here to say that it was reasonable for [SUNY Albany] to conclude that [Plaintiff's] willful failure to disclose that he had entered into a contract with a foreign educational institution engaging in the very area of research that [SUNY Albany] itself sought to foster with that institution justifies, if not requires, [SUNY Albany] to no longer keep [Plaintiff] in its employ.

Dkt. No. 73-12 at 49; *see* Dkt. No. 73-1 at ¶ 428. Plaintiff asserts, without citing any evidence, that "[t]he arbitration was not a full and fair hearing" and "[t]he [a]rbitrator's decision was wrong." Dkt. No. 85 at ¶¶ 413, 415.

### III. DISCUSSION

#### A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried, and that the undisputed facts warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). The court "cannot try issues of fact; it can only determine whether

14

there are issues to be tried." *Id.* at 36 (quotation and other citation omitted).  Substantive law determines which facts might affect the outcome of the suit under the governing law and are therefore material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In assessing the record to determine whether any issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 248 (citation omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine, material, unresolved issue for trial.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, . . . and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (internal citations and quotation marks omitted).  It is also well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Catrett*, 477 U.S. at 324.

**B.    Title VII Claims**

### 1. Exhaustion of Administrative Remedies

Title VII prohibits "discrimination in employment on the basis of race, color, religion, sex, or national origin[,]" as well as "retaliation against persons who assert rights under the statute."

15

*Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019).  "As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the [EEOC]" regarding the challenged conduct.  *Id.*  Where, as here, the complaint "concern[s] a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered 'to grant or seek relief,' Title VII instructs the complainant to file [a] charge first with the state or local agency."  *Id.* at 544 (quoting 42 U.S.C. § 2000e-5(c)).  "The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, 'whichever is earlier,' to file a charge with the EEOC."  *Id.* (quoting 42 U.S.C. § 2000e-5(e)(1)).

If a plaintiff files an EEOC charge and later brings a lawsuit alleging Title VII violations not discussed in the charge, the new claims may be permitted "if they are 'reasonably related' to the initial charge."  *Herzog v. McLane Ne., Inc.*, 999 F. Supp. 274, 275 (N.D.N.Y. 1998) (quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 692-94 (2d Cir. 1998)); *see Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).  In the Second Circuit, the "reasonably related" exception is available in three situations: "(1) loose pleading; (2) retaliation for filing an EEOC charge; and (3) similar subsequent incidents of discrimination."  *Herzog*, 999 F. Supp. at 275-76 (citing *Butts*, 990 F.2d at 1402-03).

Defendants argue that Plaintiff failed to timely exhaust administrative remedies for conduct that occurred before May 22, 2020, which is 300 days prior to the date of the DHR complaint.  *See* Dkt. No. 73-2 at 15-16.  That conduct includes the NYSERDA disagreement, Defendant Thorncroft's alleged accusations that Plaintiff misused university property, and Defendant Thorncroft's alleged interception of Plaintiff's DOE proposal.  *See id.* at 16.

16

Defendants also argue that the DHR and EEOC complaints fail to identify those incidents as discriminatory conduct. *See id.* at 16-17. They do not contest exhaustion as to other conduct mentioned in the DHR and EEOC charges. Plaintiff argues that the incidents before May 22, 2020, were part of a "pattern of discrimination, spanning years," and are consequently not time-barred. Dkt. No. 82 at 8. He also contends that the administrative complaints may be fairly read to encompass the conduct occurring before May 22, 2020. *See id.* at 9.

To determine which conduct can support Plaintiff's Title VII claims, the Court looks to the contents of the DHR and EEOC complaints. The DHR complaint explicitly claims retaliation for filing the internal SUNY complaint. *See* Dkt. No. 73-4 at 3. It also identifies race and national origin as Plaintiff's protected classes. *See id.* The narrative portion identifies the following acts and events as violations of the HRL and Title VII: (1) Defendant Thorncroft's comments about speaking "the same language" during the January 27, 2021, performance evaluation; (2) the subsequent written evaluation that Plaintiff perceived as negative; (3) Defendant Thorncroft's appointment of Dr. Brotzge, instead of Plaintiff, as SUNY Albany's Principal Investigator on the Howard University project; (4) Defendant Thorncroft's insubordination report to human resources; and (4) the 2021 counseling memorandum. *See id.* at 7-8. Similarly, the EEOC complaint checks boxes for retaliation, race discrimination, and national origin discrimination. *See* Dkt. No. 73-6 at 1. It identifies the earliest date of discrimination as March 18, 2021, the date the DHR complaint was filed, and indicates that the discrimination was ongoing. *See id.* In a shorter written narrative, the EEOC complaint alleges that: (1) Defendant Thorncroft "questioned [Plaintiff's] ability to communicate with others because of [his] accent"; (2) Defendant Thorncroft "removed [Plaintiff] as a Principal Investigator on a research project and has sought to remove

17

[him] from others"; (3) Plaintiff was retaliated against for filing the DHR complaint on March 18, 2021; and (4) Plaintiff was "suspended" on November 17, 2021.  *Id.* at 1-2.

Chronologically, the 2019 incidents occurred prior to the conduct described in the DHR and EEOC complaints.  Thus, they cannot be considered "similar *subsequent* incidents of discrimination."  *Herzog*, 999 F. Supp. at 276 (emphasis added).  Additionally, retaliation for filing an administrative charge of discrimination is an exception to the exhaustion requirement.  *See id.*  Thus, the remaining exhaustion question is whether the NYSERDA, property misuse, and interception incidents are reasonably related to the conduct in the charges through "loose pleading."  *Id.*

Under the loose pleading exception, "[a] claim is considered reasonably related if the conduct complained of [in the Title VII claim] would fall within the scope of the EEOC investigation" arising from the charge.  *Deravin*, 335 F.3d at 200-01 (citation and internal quotation marks omitted).  This determination depends on an examination of the factual allegations of the administrative charge.  *See id.* at 201.  The DHR and EEOC complaints never mention the NYSERDA project.  Although the EEOC complaint alleges that Defendant Thorncroft "removed [Plaintiff] as a Principal Investigator on a research project and has sought to remove [him] from others[,]" Dkt. No. 73-6 at 1, Plaintiff has not alleged that he was a Principal Investigator of the NYSERDA project.  Furthermore, the EEOC complaint identifies March 18, 2021, as the earliest date of discrimination, but the NYSERDA disagreement allegedly occurred in 2019.  *See* Dkt. No. 18 at ¶ 53.  As for the property misuse allegations and the DOE proposal interception, even a broad reading of the DHR and EEOC complaints fails to identify those events, which also allegedly occurred in 2019, *see id.* at ¶¶ 54-55, as bases for the Title VII

18

discrimination allegations.  Accordingly, these allegations are not reasonably related to the conduct described in the administrative charges, and the Court need not discuss their timeliness.

The Court also notes that, although Defendants do not challenge administrative exhaustion of the discretionary salary increase disagreement in 2020, neither administrative complaint offers any detail on that incident.  The DHR complaint checks a box indicating that Plaintiff was denied a pay raise, but the narrative section never discusses or even alludes to the date of that incident or any other surrounding circumstances.  *See* Dkt. No. 73-4 at 4, 7-8.  Accordingly, the Court determines that even a liberal reading of the DHR complaint fails to provide notice of a need to investigate the 2020 denial of a discretionary pay increase to Plaintiff.  *See Trivedi v. N.Y. State Unified Ct. Sys. Off. of Ct. Admin.*, 818 F. Supp. 2d 712, 737 (S.D.N.Y. 2011) (finding Title VII discrimination claims unexhausted where the plaintiff simply checked a box on an intake questionnaire and failed to provide substantive elaboration in the EEOC charge); *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 (W.D.N.Y. 1998) ("[I]t is well-settled that merely checking a box, or failing to check a box[,] does not necessarily control the scope of the charge.  The more critical analysis is whether there is any explanation or description supporting a particular claim").

Because the administrative charges fail to discuss or otherwise point to the NYSERDA incident, property misuse allegations, DOE proposal interception, and discretionary salary increase disagreement in a way that would notify the DHR and EEOC of a need to investigate them, the Court concludes that Plaintiff did not administratively exhaust his claim as to those events.  Thus, for purposes of the Title VII discrimination claim, the Court considers the performance evaluation and Defendant Thorncroft's associated comments, appointment of Dr. Brotzge instead of Plaintiff as SUNY Albany's Principal Investigator on the Howard University project, Defendant Thorncroft's insubordination report against Plaintiff, the counseling session

and Defendant Selchick's associated comments, the alternate assignment, and Plaintiff's termination. The Court also considers whether Defendant retaliated against Plaintiff for filing internal and external administrative complaints.

### 2. Discrimination

A Title VII discrimination plaintiff must establish that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002)). Once the plaintiff pleads and proves all four elements, "the burden shifts to the defendant[s], [who must] offer a legitimate, non-discriminatory rationale for [their] actions." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). From there, to defeat summary judgment, the plaintiff must show that the defendants' proffered non-discriminatory reasons were a pretext for discrimination. *See id.* (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)); *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (citations omitted).

Defendants concede that Plaintiff satisfies the first two elements. *See* Dkt. No. 73-2 at 19 n.1. However, they assert that their challenged actions are not adverse employment actions within the meaning of Title VII. *See id.* at 19-25. In opposition, Plaintiff argues that the adversity bar is not high and the challenged actions qualify as adverse actions under Title VII. *See* Dkt. No. 82 at 11-24. Plaintiff is correct that although a Title VII discrimination plaintiff must show "some harm" due to an employer's action, he is not required to "show that the injury satisfies a significance test." *Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024); *see* Dkt. No. 82 at 19. However, even assuming *arguendo* that all the actions underlying Plaintiff's Title VII

20

discrimination claim constitute adverse employment actions, Plaintiff fails to raise any genuine dispute of material fact that would suggest the causation element is satisfied. Accordingly, the Court turns to that element of the Title VII discrimination analysis.

### a. Causation

To demonstrate that an adverse action occurred because of a defendant's discriminatory conduct, a plaintiff must adduce evidence showing an "inference of discriminatory intent" on the defendant's part. *Terry*, 336 F.3d at 138 (citing *Collins*, 305 F.3d at 118). This inference can be established "either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." *Bart*, 96 F.4th at 569 (citation and internal quotation marks omitted).

Defendants argue that Plaintiff fails to establish any inference of discriminatory intent. *See* Dkt. No. 73-2 at 25-31. Plaintiff argues that remarks by Defendants Thorncroft and Selchick showing discriminatory animus "have been pleaded." Dkt. No. 82 at 25. His opposition papers point to Defendant Thorncroft's comments about Plaintiff's "technical" speech and Defendant Selchick's "janitor" remark during the counseling session. *See id.* at 24-27.

Because a party cannot defeat summary judgment simply by citing the allegations in its pleadings, *see Catrett*, 477 U.S. at 324, the Court rejects Plaintiff's reliance on mere allegations that Defendants Thorncroft and Selchick made discriminatory remarks. Moreover, Plaintiff's repetitive summary of Defendants' actions does not point to any causal link—even a circumstantial one—giving rise to an inference of discriminatory intent. For example, Plaintiff argues without citation that Defendant Thorncroft, "immediately after harassing [Plaintiff] about his English speaking, . . . expressed to [Defendant] Selchick that [Plaintiff] was incompatible with SUNY moving forward." Dkt. No. 82 at 27. He also states in a conclusory fashion that

21

"[Defendant] Thorncroft has shown through his actions that he believes [Plaintiff] is beneath him; this is racial animus." *Id.* at 31.  Plaintiff adduces no evidence showing that the speech remark had anything to do with Plaintiff's race or national origin, and similarly fails to controvert Defendant Thorncroft's assertion that he was referring to scientific terms that outside scientists might not understand.  As for Defendant Selchick's "janitor" remark, Plaintiff states that "[t]he remark[] most certainly could be viewed by a reasonable juror as discriminatory[,]" *id.* at 26, and Defendant Selchick supported a racist atmosphere by making the remark, *see id.* at 31.  Other than the remark's occurrence "during a counseling session related to [Plaintiff's] job performance and status[,]" Plaintiff does not identify any evidence supporting an inference of discriminatory intent. *Id.* at 26.  Likewise, Plaintiff does not make substantive arguments or cite any record evidence supporting the necessary causal link for the Howard University disagreement, insubordination report, alternate assignment, or termination.  *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 107 (W.D.N.Y. 2002) ("For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present conclusory allegations of discrimination . . .") (citations and internal quotation marks omitted).

### b. Pretext

Even if Plaintiff established an inference of discriminatory intent behind his termination, Defendants provide a non-discriminatory justification that warrants attention from the Court. Where a defendant provides a non-discriminatory reason for its conduct, the burden shifts to the plaintiff to show "that the employer's stated reason was pretext for discrimination." *Bart*, 96 F.4th at 570 (citations omitted).  The plaintiff "is not required to demonstrate the falsity of the employer's proffered reason." *Id.* (citing *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010)) (emphasis removed).  In other words, a plaintiff can show pretext by proving that "an

22

impermissible factor was a *motivating factor*, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Id.* (citations omitted).

As discussed, Defendants demonstrate that Plaintiff was terminated for failing to disclose an employment agreement with Wuhan University, a violation of the New York Public Officers Law. *See* Dkt. No. 73-2 at 48 ("The fact that the university with which [P]laintiff had entered into a contract was a Chinese university made no difference—if he had entered into a clandestine agreement with any other university or employer, the determination would have been the same"). That statute prohibits public employees from, *inter alia*, "accept[ing] other employment which will impair [their] independence of judgment in the exercise of [their] official duties[,]" "accept[ing] employment . . . which will require [them] to disclose confidential information which [they] gained by reason of [their] official position or authority[,]" "disclos[ing] confidential information acquired . . . in the course of [their] official duties[,]" and "us[ing] or attempt[ing] to use [their] official position to secure unwarranted privileges or exemptions[.]" N.Y. PUB. OFF. LAW §§ 74(3)(a)-(d). An independent arbitrator found that termination was the appropriate penalty, given the loyalty issues raised by Plaintiff's conduct. *See* Dkt. No. 73-12 at 49.

"Federal court review of an arbitral judgment is highly deferential; such judgments are to be reversed only where the arbitrators have exceeded their authority or made a finding in manifest disregard of the law." *Pike v. Freeman*, 266 F.3d 78, 86 (2d Cir. 2001) (citation omitted). Although Plaintiff repeatedly asserts that "[t]he [a]rbitrator's decision was wrong[,]" he cites no evidence as to why. Dkt. No. 85 at ¶¶ 415-21. Aside from voicing his disagreement with the arbitrator's decision, Plaintiff makes no substantive arguments regarding its propriety. He also does not cite any evidence showing an impermissible motivating factor behind the termination.

23

Overall, his objections are conclusory and fail to show a genuine dispute of material fact as to the reason for his termination. *See Seils*, 192 F. Supp. 2d at 107.

Defendants' motion is granted as to the Title VII discrimination claim.

### 3. Retaliation

To establish retaliation under Title VII, "an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Terry*, 336 F.3d at 141 (citation and internal quotation marks omitted). Importantly, a retaliation plaintiff must prove "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* The *McDonnell Douglas* burden-shifting framework described above also applies to Title VII retaliation claims. *See Terry*, 336 F.3d at 141 (citation omitted).

Plaintiff's retaliation claim relies on three instances of protected activity: (1) the internal SUNY complaint of March 10, 2021; (2) the DHR complaint of March 18, 2021; and (3) the EEOC complaint of December 23, 2021. *See* Dkt. No. 18 at ¶ 135. He appears to identify the alternate assignment, suspension, and termination as retaliatory adverse actions. *See id.* at ¶ 136. Defendants concede that Plaintiff engaged in known protected activity by filing the three complaints. *See* Dkt. No. 73-2 at 52 n.8. However, they argue that Plaintiff fails to demonstrate any adverse actions or establish causation. *See id.* at 52-56. They also contend that they have shown non-retaliatory reasons for the alternate assignment, suspension, and termination, which Plaintiff cannot show were pretextual. *See id.* at 56-58. In opposition, Plaintiff argues that Defendants took adverse actions against him, temporal proximity between his protected activity

and the adverse actions establishes causation, and Defendants' supposedly non-retaliatory justifications were pretextual. *See* Dkt. No. 82 at 35-38. Based on the record, the Court can resolve this claim by examining causation and pretext.

### a. Causation

Even under the but-for causation standard, "'a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). Although the Second Circuit has "declined to draw 'a bright line to define the outer limits beyond which' temporal proximity may be established, [it has] generally held that causation can only be inferred after the passage of a few weeks or months[.]" *D'Andrea v. Nielsen*, 765 Fed. Appx. 602, 605 (2d Cir. 2019) (summary order) (quoting *Gorman-Bakos*, 252 F.3d at 554). "[A] delay of more than a year is fatal to a showing of causation[.]" *Id.* (citing *Cortes v. M.T.A. N.Y.C. Transit*, 802 F.3d 226, 233 (2d Cir. 2015); *Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005)).

Some courts in this circuit have determined "that the temporal nexus between the protected activity and the adverse employment action must be three months or less to establish a causal connection. *Czerwinski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 6:18-CV-635, 2022 WL 685287, *11 (N.D.N.Y. Mar. 8, 2022) (citation and internal quotation marks omitted); *see, e.g.*, *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999). However, the Second Circuit has found causation where the temporal gap was approximately twice as long. *See Gorzynski v.*

*JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[W]e have previously held that five months is not too long to find the causal relationship") (citing *Gorman-Bakos*, 252 F.3d at 555); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) ("The seven-month gap between Summa's filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote") (citing *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980)).

Here, the record shows that Plaintiff was put on an alternate assignment in November 2021, approximately eight months after he filed the SUNY and DHR complaints. *See* Dkt. No. 73-1 at ¶¶ 291, 306, 320. Plaintiff does not dispute that timeline. *See* Dkt. No. 85 at ¶¶ 291, 306, 320. The record also shows that Plaintiff was suspended without pay on May 6, 2022, approximately four-and-a-half months after he filed the EEOC complaint. *See* Dkt. No. 73-1 at ¶¶ 309, 377. Plaintiff does not dispute those dates, either. *See* Dkt. No. 85 at ¶¶ 309, 377. The parties do not dispute that Plaintiff was served with a revised notice of discipline on July 25, 2023, which notified Plaintiff of the charges against him and SUNY Albany's intent to terminate his employment, more than eighteen months after he filed the EEOC complaint. *See* Dkt. No. 73-1 at ¶ 404; Dkt. No. 85 at ¶ 404; Dkt. No. 73-49. It is also undisputed that an arbitrator upheld Plaintiff's termination on April 15, 2024, more than three years after the SUNY and DHR complaints were filed and almost two-and-a-half years after the EEOC complaint was filed. *See* Dkt. No. 73-1 at ¶ 428; Dkt. No. 85 at ¶ 428 (stating that the arbitrator's decision was wrong, but not disputing the date of the arbitrator's decision); Dkt. No. 73-12.

Because Plaintiff was served with the notice of discipline more than a year and a half after he filed the EEOC complaint, the Court determines that, as a matter of law, he has not established causation as to that act or the associated termination. However, in light of Second Circuit

26

precedent, the Court finds that the eight-month gap preceding the alternate assignment and the four-and-a-half-month gap preceding the suspension do not automatically preclude a finding of causation.  For those acts, the Court turns to Defendants' non-retaliatory justifications and Plaintiff's contention that they were pretextual.

### b.  Pretext

If a Title VII plaintiff establishes a *prima facie* claim of retaliation, the defendant has an opportunity to present non-retaliatory reasons for its actions.  *See Kwan*, 737 F.3d at 845 (citation omitted).  From there, the burden shifts back to the plaintiff to show that the defendant's reasons were a pretext for retaliation.  *See id.* (citation omitted).  Importantly, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage."  *Id.* at 847 (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010), *abrogated in part on other grounds*, *Nassar*, 570 U.S. 338); *see Brown v. City Univ. of N.Y.*, No. 25-CV-694, 2026 WL 456924, *3 (2d Cir. Feb. 18, 2026) (citing *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014)).  Although a plaintiff may rely in part on temporal proximity to show pretext, he must cite other evidence in addition.  *See Kwan*, 737 F.3d at 847 (citations omitted); *Brown*, 2026 WL 456924, at *3-4 (rejecting a plaintiff's pretext argument because she provided no evidence, other than the alleged retaliation's temporal proximity to her protected activity, to show that her employer's non-retaliatory justifications were pretextual).

Defendants argue that they presented legitimate, non-retaliatory reasons for the alternate assignment and suspension.  Specifically, they assert that the SUNY Albany President's Office directed Defendant Selchick "to place Plaintiff on an alternate assignment while the forged telecommuting form was investigated."  Dkt. No. 73-2 at 43.  They also argue that the SUNY Albany President's Office ordered Plaintiff's suspension based on the possibility that Plaintiff

violated the Public Officers Law. *See id.* at 47. Plaintiff argues that "Defendants' stated business reasons for their adverse employment actions, reassigning [Plaintiff], suspending him, and ultimately firing him are unfounded and pretextual[,]" Dkt. No. 82 at 38, but other than the temporal proximity discussed above, Plaintiff cites no evidence of retaliatory pretext regarding the alternate assignment and suspension.

Defendants' motion is granted as to the Title VII retaliation claim.

## C.     HRL Claims

Plaintiff makes discrimination and retaliation claims under the HRL that mirror those under Title VII. *See* Dkt. No. 18 at ¶¶ 138-51. These claims are asserted against all Defendants. *See id.* They fail as to SUNY Albany because it is immune under the Eleventh Amendment, and they fail on the merits as to Defendants Thorncroft and Selchick.

### 1.  *Sovereign Immunity*

Defendants argue that SUNY Albany is a state agency with sovereign immunity from the HRL claims. *See* Dkt. No. 73-2 at 60. Plaintiff's opposition papers do not respond to this argument. *See* Dkt. No. 82 at 40.

"The Eleventh Amendment . . . bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity." *Kilcher v. N.Y. State Police*, No. 1:19-CV-157, 2019 WL 2511154, *3 (N.D.N.Y. June 18, 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984)). The Second Circuit has recognized that, "[f]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued[,] the State is the real party." *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (citation and internal quotation marks omitted). Because neither SUNY nor the

28

State of New York has consented to suit, SUNY Albany has sovereign immunity as to the HRL claims.[5] *See Wiley v. SUNY Plattsburgh*, 407 F. Supp. 3d 119, 126 (N.D.N.Y. 2019) (stating that a plaintiff's HRL claims against a SUNY school were barred by sovereign immunity).

Defendants' motion is therefore granted on the HRL claims as to SUNY Albany. Because "sovereign immunity implicates jurisdictional concerns[,]" *Hale v. Mann*, 219 F.3d 61, 67 (2d Cir. 2000) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996); *Pennhurst*, 465 U.S. at 100), the DHR claims against SUNY Albany are dismissed without prejudice, *see Canfield v. New York*, No. 6:24-CV-1357, 2025 WL 1288747, *2-3 (N.D.N.Y. May 5, 2025); *Karupaiyan v. New York*, No. 23-CV-1257, 2024 WL 2174272, *2 (2d Cir. May 15, 2024) (summary order) (determining that, where sovereign immunity applied, the district court erroneously dismissed the plaintiff's claims with prejudice instead of without prejudice).

### 2. Merits

HRL retaliation claims are subject to the same burden-shifting framework that Title VII uses.[6] *See Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (citation omitted); *Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 95 (W.D.N.Y. 2021) (citations omitted). Thus, the HRL retaliation claim is dismissed as to Defendants Thorncroft and Selchick for the same reasons as its Title VII counterpart.

---

[5] Because "Congress has abrogated the states' sovereign immunity for claims under Title VII," the Court's jurisdiction over those claims is proper. *Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976)).

[6] Although the HRL uses a "similar but not identical" standard to determine what constitutes protected activity, *Van Denburgh v. New York*, No. 1:24-CV-989, 2025 WL 2483415, *23 (N.D.N.Y. Aug. 28, 2025), Defendants do not challenge Plaintiff's engagement in protected activity, *see* Dkt. No. 73-2 at 52 n.8.

The HRL discrimination claim is also subject to the same standard as its Title VII counterpart. *See Musante v. Mohawk Valley Cmty. Coll.*, 270 F. Supp. 3d 564, 577 (N.D.N.Y. 2017) (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012); citing *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 305 (N.D.N.Y. 2013)). Defendants argue that HRL liability cannot attach because Defendants Thorncroft and Selchick are not considered employers under the HRL. *See* Dkt. No. 73-2 at 60-61. Plaintiff argues otherwise. *See* Dkt. No. 82 at 40. However, the Court need not reach that issue because it has already determined, for the properly exhausted portions of the Title VII discrimination claim, that Plaintiff fails to raise a genuine dispute of material fact as to causation.

The HRL does not impose an exhaustion requirement, *see Bader*, 985 F. Supp. 2d at 318 n.18 (citation omitted), so the Court considers the merits of Plaintiff's HRL discrimination claim for the events not properly exhausted under Title VII. Plaintiff fails to cite any evidence showing a genuine dispute of material fact on the causation prong for the NYSERDA disagreement, property misuse allegations, DOE proposal, and denial of the discretionary salary increase. In other words, Plaintiff fails to adduce any evidence in the record supporting an inference of discriminatory intent behind those actions. As explained, Plaintiff's response to Defendants' statement of material facts includes only conclusory statements of discriminatory animus, with no citations to the record. *See* Dkt. No. 85. Plaintiff's HRL discrimination claim is therefore dismissed.

Defendants' motion is granted on this claim as to Defendants Thorncroft and Selchick.

**D.      Equal Protection Claim**

Plaintiff alleges that Defendants Thorncroft and Selchick violated his constitutional rights by treating him with discriminatory and retaliatory animus. *See* Dkt. No. 18 at ¶¶ 152-57.

Specifically, he sues them in their personal capacities for equal protection violations. *See id.* Defendants Thorncroft and Selchick argue that the claim fails on the merits or, alternatively, that they are entitled to qualified immunity. *See* Dkt. No. 73-2 at 58-60. Plaintiff opposes both premises. *See* Dkt. No. 82 at 38-39.

Where a plaintiff alleges a Title VII discrimination or retaliation claim and an equal protection claim against a state actor, "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (citing *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996)); *see Cunningham v. N.Y. State Dep't of Lab.*, 326 Fed. Appx. 617, 620 (2d Cir. 2009) (summary order); *Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 459 (N.D.N.Y. 2022) (citations omitted); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82, 91 (2d Cir. 2015). Here, the record amply shows that Defendants Thorncroft and Selchick worked for SUNY Albany at the time of the challenged conduct, and Defendants do not contest that they were state actors. Because Plaintiff's discrimination and retaliation claims fail for the reasons stated above, the equal protection claim fails for the same reasons. *See Cunningham*, 326 Fed. Appx. at 620.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 73) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's HRL discrimination and retaliation claims against SUNY Albany are **DISMISSED without prejudice** for lack of jurisdiction; and the Court further

**ORDERS** that the rest of Plaintiff's claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 28, 2026
　　　　Albany, New York

Mae A. D'Agostino
U.S. District Judge

32